SEL/KAJ/dah      #13-007      9/16/15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHNNIE WATKINS, as Guardian of the Estate of JOHNNICE FORD, a disabled person, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) No. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT AT LAW

Plaintiff, JOHNNIE WATKINS, as Guardian of the Estate of JOHNNICE FORD, a disabled person, by and through her attorneys, SUSAN E. LOGGANS & ASSOCIATES, P.C., complains against defendant, UNITED STATES OF AMERICA ("UNITED STATES"), upon information and belief, and states as follows:

### JURISDICTION

1. This action is brought pursuant to the Federal Tort Claims Act ("FTCA"), 42 U.S.C. § 233, against the United States of America, which vests exclusive subject matter jurisdiction of Federal Tort Claims litigation in the Federal District Court.

2. Pursuant to 28 U.S.C. § 2675, this claim was presented to the appropriate agency of defendant UNITED STATES, namely the Department of Health and Human Services ("PUBLIC HEALTH SERVICES"), on January 19, 2015 for the claims of plaintiff JOHNNIE WATKINS, as Guardian of the Estate of JOHNNICE FORD, a disabled person. This claim was denied.

3. Notice of Removal of this Civil Action to Federal Court was executed by the United States Attorney's Office (NDIL), pursuant to 28 U.S.C. § 2679(d), on October 24, 2014.

4. Jurisdiction is conferred upon this court by 28 U.S.C. § 1346(b).

## VENUE

5. Pursuant to 28 U.S.C. § 1391(b)(1) and/or 1391(b)(2), as well as 28 U.S.C. § 1391(e)(1), venue is proper in the Northern District of Illinois because the UNITED STATES is a co-defendant, and its agent, BARI PARKS-BALLARD, M.D., as well as plaintiff JOHNNIE WATKINS, both reside in the Northern District of Illinois.

## GENERAL ALLEGATIONS

6. Plaintiff JOHNNIE WATKINS is a competent adult and the mother of JOHNNICE FORD, a disabled person.

7. On January 14, 2015, plaintiff JOHNNIE WATKINS was appointed Guardian of the Estate of JOHNNICE FORD by the Honorable Judge Carolyn Quinn of the Circuit Court of Cook County – Probate Division, and as her legal guardian brings this cause of action.

8. On or about September 10, 2008, and at all times relevant herein, defendant UNITED STATES acted through its agency, PUBLIC HEATH SERVICES.

9. On or about September 10, 2008, and at all times relevant herein, PUBLIC HEALTH SERVICES provided FAMILY CHRISTIAN HEALTH CENTER ("FAMILY CHRISTIAN"), a private entity and corporation licensed to do business in the State of Illinois, with grant money and, in so doing, made FAMILY CHRISTIAN an operational division of defendant UNITED STATES.

10. On or about September 10, 2008, and at all times relevant herein, defendant UNITED STATES' agency, FAMILY CHRISTIAN, was a medical facility that provided rooms, drugs, medical services, equipment, and medical personnel acting on its behalf, including BARI PARKS-BALLARD, M.D., for the care and treatment of patients.

11. On or about September 10, 2008, and at all times relevant herein, defendant UNITED STATES' agent, BARI PARKS-BALLARD, M.D., individually and within the scope of his official capacity as

2

physician and employee of defendant UNITED STATES' agency, FAMILY CHRISTIAN, saw patients for the purposes of care and treatment at defendant INGALLS MEMORIAL.

12. On or about September 10, 2008, and at all times relevant herein, defendant INGALLS MEMORIAL, a corporation licensed to do business in the State of Illinois and owned by defendant INGALLS HEALTH, also a corporation licensed to do business in the State of Illinois, was a medical facility that provided rooms, drugs, medical services, equipment, and medical personnel for the care and treatment of patients, including JOHNNICE FORD.

13. On or about September 10, 2008, and at all times relevant herein, JOHNNICE FORD was seen in the emergency department of defendant INGALLS HEALTH, by and through its agent, defendant INGALLS MEMORIAL, and was cared for, and treated by, defendant UNITED STATES' agent, BARI PARKS-BALLARD, M.D. and other physicians, nurses, and medical staff while in the scope of their employment.

14. On September 10, 2008, JOHNNICE FORD was assessed with hyperemesis gravidarum, hypokalemia, and dehydration by defendant UNITED STATES' agent, BARI PARKS-BALLARD, M.D. JOHNNICE FORD was ultimately diagnosed with Wernicke's encephalopathy upon transfer to another hospital.

### COUNT I – SPECIFIC ALLEGATIONS OF NEGLIGENCE
**FAMILY CHRISTIAN HEALTH CENTER AND BARI PARKS-BALLARD, M.D.**

15. Plaintiff hereby restates paragraphs 1 through 14 as though set forth here in full.

16. On or about September 10, 2008, and at all times relevant herein, defendant UNITED STATES' agency, FAMILY CHRISTIAN, acting by and through its duly authorized agents and employees, including physician BARI PARKS-BALLARD, M.D. and all treating nurses, and acting as an operational division of Defendant, UNITED STATES, was negligent in one or more of the following ways:

    a. Failed to properly observe, treat, and care for JOHNNICE FORD, even though she displayed symptoms and warning signs of Wernicke's encephalopathy and/or other neurological problems;

    b. Failed to formulate a proper plan of care for JOHNNICE FORD;

    c. Failed to obtain timely and proper consultations and interventions from the neurology unit;

    d. Failed to timely perform necessary tests and/or procedures, including but not limited to administration of parenteral thiamine; and

    e. Failed to diagnose JOHNNICE FORD's Wernicke's encephalopathy, despite her MRI scans showing changes of the brain consistent with Wernicke's and her display of neurological symptoms.

17. As a result of the facts set out in this Complaint at Law, defendant UNITED STATES' agency and agent, FAMILY CHRISTIAN and BARI PARKS-BALLARD, M.D., owed a duty to JOHNNICE FORD to act with reasonable care.

18. Defendant UNITED STATES' agency and agent, FAMILY CHRISTIAN and BARI PARKS-BALLARD, breached that duty, proximately causing JOHNNICE FORD injuries of a personal and pecuniary nature, including but not limited to permanent disability.

19. The acts and/or omissions set forth above would constitute a claim under the law of the State of Illinois. (Pursuant to 735 ILCS 5/2-622 (a)(1), the required report of a health consultant is attached hereto, as well as the affidavit of the attorney that a meritorious causes of action exists, as Exhibits 1 and 2).

20. Defendant UNITED STATES is liable pursuant to 28 U.S.C. § 1346(b)(1).

4

WHEREFORE, plaintiff JOHNNIE WATKINS, as Guardian of the Estate of JOHNNICE FORD, a disable person, demands judgment against defendant UNITED STATES OF AMERICA, in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000) DOLLARS, plus cost and attorney fees.

_____
Attorneys for Plaintiff

SUSAN E. LOGGANS & ASSOCIATES, P.C.
222 N. LaSalle Street, Suite 460
Chicago, IL 60601
(312) 201-8600
loggans@logganslaw.com
#1684-663

SEL/KAJ/dah      9/16/15      #13-007

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOHNNIE WATKINS, as Guardian of the Estate of JOHNNICE FORD, a disabled person, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) |

### AFFIDAVIT OF PLAINTIFF'S ATTORNEY

I, PATRICK J. CONDRON, an attorney on oath, do hereby state that I have consulted with a physician, pursuant to 735 ILCS 5/2-622, who I reasonably believe is:

a. Knowledgeable in the relevant issues involved in this action;

b. Practices or has practiced in the last six years or teaches or has taught within the last six years in the same area of health care of medicine that is at issue in this action; and

c. Is qualified by experience and has demonstrated competence in the subject of this case.

The physician, is licensed and board certified in ophthalmology, and who is currently engaged in active medical practice and the care, diagnosis and treatment of patients who is familiar with the applicable standard of care that applies to this case has determined in the attached written report, after a review of the medical records and other materials involved in this action, that negligence occurred in the care and treatment of Johnnice Ford, a disabled person.

I affirm that I have reviewed Section 5/2-622 of the Illinois Code of Civil Procedure and I believe that there is a reasonable and meritorious cause for the filing of this action. Finally, I have concluded on the basis of the physician's review and consultation (see attached report and subsequent letter referencing said report) with redactions allowed by Section 5/2-622(a)(1)), that there is a reasonable and meritorious cause for filing a cause of action against: United States of America.

FURTHER AFFIANT SAYETH NOT.

_____
One of her Attorneys

Subscribed to and Sworn before me
this ___ September, 2015.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
PATRICIA A. GARGANO
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 5/22/2018

SUSAN E. LOGGANS & ASSOCIATES, P.C.
222 North LaSalle Street, Suite 460
Chicago, IL 60601
(312) 201-8600
loggans@logganslaw.com

2

## JOHNNICE FORD
### 6/25/14

I am a Board Certified Neurologist licensed to practice in Illinois and currently am in active practice. I have reviewed the records of Johnnice Ford who is a 31 year old lady admitted to Ingalls Hospital on 9/10/08 with a history of nausea, vomiting, dizziness and weakness at 35 4/7 weeks gestation. The ED records reflect a history of visual hallucinations. The admission order reflects hyperemesis gravidarum, hypokalemia, and dehydration and a plan for 23 hour of observation which on 9/11/08 was changed to a full admission. This was not her first admission for these same symptoms during this pregnancy. During this hospitalization as reflected in the nursing notes, on 9/11/08 Johnnice described blurry vision and on 9/12/08 reported that her current decline in health started June 08. On 9/11/08 a nursing note at 23:15 describes a frail appearing female, who when she sat up voiced being dizzy, and reported double vision which she states she had had previously. A medication order from this day notes pyridoxine 25 mg is added to her IV. On 9/13/ at 19:10 the patient is described as being drowsy and on 9/14/08 ; Neurology is consulted, and a stat CT was done and EEG ordered. At 3:50, stat MRI an MRV are ordered by the neurologist. The patient underwent an emergency C section and she was transferred to the ICU on 9/14/08. On 9/15/08 she is seen by Neurology and is described as being obtunded. The nursing note describes petechiae on her feet and bilateral nystagmus, and the following morning slowness to verbal responses, lethargy, inability to complete more than 2 sentences and disorientation. At 4 pm she is not oriented at all or able to follow commands. She is transferred to Rush on 9/17/08 where she ultimately was diagnosed with Wernicke's encephalopathy. Her discharge medications included, from Ingalls, prenatal vitamins and antihypertensives.

Mrs. Johnnice Ford was ultimately diagnosed as having Wernicke's encephalopathy. Prior to this, her 9/14/08 MRI already showed changes of the brain consistent with Wernicke's. I believe that, in the first few days of her hospitalization leading up to the C-section, Ms. Ford displayed symptoms that were neurological in nature, and these included hallucinations, dizziness, imbalance, weakness, double vision, and nystagmus. I believe that the admitting physician, Dr. Bari Parks-Ballard, should have obtained a neurological consultation on or before 9/13/08. The failure to obtain timely neurological consultation most likely contributed to the delay in diagnosis and intervention. In my opinion, had parenteral thiamine been administered on or before 9/14/2008 by the primary physician at the time, Dr. Bari Parks-Ballard, the progression of Wernicke's encephalopathy would have been halted, and permanent sequelae would have been avoided or greatly minimized. It is also my opinion that had therapeutic doses of thiamine been administered by the attending medical service after 9/14/08, perhaps as late as 9/16/08, the degree of permanent neurological sequelae would have been reduced. I also believe that, given extended time period of poor nutritional intake and 33-pound weight loss, parenteral thiamine should have been administered under the general medical standard of care, either in the emergency department, or by the primary admitting physician, Dr. Ballard. Had this been done, the progression to permanent encephalopathy would have been avoided or greatly minimized.

These opinions are to a reasonable degree of medical certainty. I reserve the right to amend my opinions as discovery proceeds.

_Cathy M. Helgason, M.D. 6/25/14_
Cathy Helgason, M.D.